```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

|                          |   |                      |
|--------------------------|---|----------------------|
| **UNITED STATES OF AMERICA,** | ) |                      |
|                          | ) |                      |
| Plaintiff,               | ) |                      |
|                          | ) |                      |
| v.                       | ) | No. 20-cr-20121-JTF-tmp |
|                          | ) |                      |
| **BOBBY EGGLESTON,**     | ) |                      |
|                          | ) |                      |
| Defendant.               | ) |                      |

**REPORT AND RECOMMENDATION**

Before the court by order of reference is defendant Bobby Eggleston's Motion to Suppress Evidence, filed on October 26, 2020. (ECF Nos. 19-20.) The government responded to the motion on November 23, 2020. (ECF No. 23.) For the reasons below, it is recommended that the Motion to Suppress be denied.

## I.   PROPOSED FINDINGS OF FACT

The following Proposed Findings of Fact are based on evidence presented at the suppression hearing on December 16, 2020. (ECF No. 26.) At the hearing, the court heard testimony from Officer Thomas Hambrock of the Germantown Police Department and admitted into evidence three exhibits, including photographs of the rear of Defendant Bobby Eggleston's vehicle, photographs of the weapon recovered during the search of Eggleston's vehicle, and video footage recorded from the dashboards of Officer Hambrock's and

Officer Philip Skagg's police cruisers ("dash cam"). (ECF No. 27.) Having reviewed the evidence and carefully considered the witness testimony, the court finds Officer Hambrock's testimony to be credible.

On September 16, 2019, Officer Hambrock observed a gold-colored Chevrolet Impala driving northbound on South Germantown Road with an unreadable rear license plate. From his police cruiser, the license plate appeared to Officer Hambrock to be a temporary tag that was placed inside a plastic bag, causing the information on the tag to appear distorted. With the intent of initiating a traffic stop, Officer Hambrock pulled behind the vehicle as it stopped at a traffic light in preparation to turn onto Wolf River Boulevard. With his cruiser situated directly behind the vehicle, Officer Hambrock activated his lights and siren. After completing the turn, the driver, later identified as Bobby Eggleston, stopped the vehicle in the middle of the road. Using a loudspeaker, Officer Hambrock directed Eggleston to pull his vehicle over to the side of the road so as to not block oncoming traffic.

Officer Hambrock exited his police cruiser and approached Eggleston's driver-side window to ask for his driver's license, registration, and proof of insurance. Eggleston provided a Tennessee identification card and stated that he has never had a driver's license. He also said that he did not have any proof of

insurance or registration for the vehicle. Officer Hambrock returned to his cruiser to run the information on Eggleston's identification card. Dispatch reported that Eggleston's license had been revoked and that he had no outstanding warrants. Officer Hambrock approached the vehicle for a second time to scan the car's Vehicle Identification Number ("VIN number") through the windshield. Officer Hambrock ran the VIN number on his computer and requested that dispatch run the number as well. This inquiry revealed that the vehicle had never been registered in Tennessee, Mississippi, or Arkansas.

Officer Hambrock began to notice that traffic on the street was coming dangerously close to where he was standing, so he directed Eggleston to pull his vehicle into a nearby parking lot to safely complete the stop. Once in the parking lot, Officer Hambrock began filling out paperwork for Eggleston's misdemeanor traffic citations. Officer Hambrock testified that it usually takes between five and ten minutes to complete the paperwork for a misdemeanor traffic citation. After a few minutes, he returned to Eggleston's vehicle to verify that the address on the identification card was accurate. At this point, Eggleston handed Officer Hambrock a document showing that he purchased the vehicle

in a different state.[1] As they were speaking, Officer Hambrock noticed for the first time what he believed to be the smell of marijuana emanating from the vehicle. Eggleston stated that his cousins had smoked in the vehicle earlier in the week but that there were no drugs in the car. Believing that he may have to eventually search the vehicle, Officer Hambrock called a second police officer to the scene.[2] At that point, Eggleston reached into the center console of the car and pulled out a small bag of marijuana. He handed the bag to Officer Hambrock, who placed it on top of the vehicle.[3]

Before the second officer arrived, Officer Hambrock asked Eggleston if there was anything else in the car that might get him in trouble and advised him that they would be searching the car. Eggleston stated that there was not but glanced nervously in the direction of the car's glove compartment. Officer Hambrock repeated his question, to which Eggleston responded that there was

---

[1]Officer Hambrock could not recall during the hearing which state issued the document, but testified that it was not Tennessee, Mississippi, or Arkansas.

[2]Officer Hambrock testified that it is department policy for an officer not to search a vehicle or ask a suspect to get out of a vehicle without having at least one other officer on the scene.

[3]Officer Hambrock can be seen placing a small item on the roof of Eggleston's vehicle in the dash cam footage. (ECF No. 27, ex. 2 at 17:06:25.) According to timestamps on the dash cam, about sixteen minutes elapsed between when Officer Hambrock turned on his police cruiser lights and when he placed the item on the roof of the vehicle.

a gun in the glove compartment and that he was hesitant to tell the officer about the gun or the drugs because he was "on paper" for an aggravated robbery conviction. Upon hearing this, Officer Hambrock told Eggleston to keep his hands on the steering wheel. Officer Skaggs arrived shortly thereafter.

Officer Hambrock quickly informed Officer Skaggs about the bag of marijuana and the gun in the glove compartment. They removed Eggleston from the vehicle and placed him in handcuffs. Officer Hambrock performed a pat down to check Eggleston for weapons. Finding none, Officer Hambrock escorted Eggleston to the back of his police cruiser. The officers searched the car and found a revolver in the glove compartment. It was later confirmed that Eggleston had been convicted of aggravated burglary in 2017 and of conspiracy to commit aggravated robbery in 2018. The officers arrested Eggleston for unlawful possession of a weapon and simple possession of a controlled substance, and cited him for several misdemeanor traffic violations, including driving with a suspended license, driving without proof of insurance, driving an unregistered vehicle, driving while not wearing a seatbelt, and driving without a displayed registration plate. On June 23, 2020, a federal grand jury indicted Eggleston on one count of knowingly possessing a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.)

## II.   PROPOSED CONCLUSIONS OF LAW

**A.   Officer Hambrock Had a Proper Basis for Initiating the Stop**

The Fourth Amendment to the United States Constitution prohibits police officers from conducting unreasonable searches and seizures. U.S. Const. amend. IV. It is well settled that, because "there is nothing 'unreasonable' about stopping a vehicle whose driver has just committed a traffic violation," police officers who witness a suspect commit a traffic violation may briefly stop the vehicle and detain the driver. United States v. Street, 614 F.3d 228, 232 (6th Cir. 2010) (quoting Whren v. United States, 517 U.S. 806, 810 (1996)). As such, the United States Supreme Court has stated that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. The Sixth Circuit, however, has restricted the probable cause requirement to completed traffic violations. United States v. Guajardo, 388 F. App'x 483, 487 (6th Cir. 2010) (citing United States v. Simpson, 520 F.3d 531, 540 (6th Cir. 2008)); see also United States v. Jeffries, 457 F. App'x 471, 477 (6th Cir. 2012). By contrast, when the stop is for an ongoing violation, no matter how minor, "reasonable suspicion will be sufficient to justify an investigatory stop." Guajardo, 388 F. App'x at 487 (citing Simpson, 520 F.3d at 541). One such ongoing traffic violation is driving with an obstructed license plate in violation of Tenn. Code Ann. § 55-4-110(b), as the violation continues after the driver is

pulled over. Jeffries, 457 F. App'x at 477 (applying the reasonable suspicion standard to defendant's obstructed license plate violation); see also United States v. Sanchez, 18-cr-20031-JTF-tmp, 2018 WL 5262080, at *4 (W.D. Tenn. July 11, 2018) ("Because a violation of T.C.A. § 55-4-110(b) is considered an ongoing criminal offense, an officer need only possess reasonable suspicion that a vehicle's registration plate violates the statute before stopping the vehicle.") (citing Simpson, 520 F.3d at 542). An officer has reasonable suspicion to stop a vehicle for a traffic violation if, "at the moment that [he] initiated the stop, the totality of the circumstances provided the officer[] with the reasonable suspicion required in order to detain a citizen under Terry." Feathers v. Aey, 319 F.3d 843, 848–49 (6th Cir. 2003).

During the hearing, Eggleston appeared to concede that the stop was lawfully initiated. Regardless, Officer Hambrock was justified in stopping Eggleston's vehicle because he had reasonable suspicion that Eggleston was committing an ongoing traffic violation, namely, driving with an obstructed license plate. See Tenn. Code Ann. § 55-4-110(b) ("Every registration plate shall at all times be securely fastened . . . in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible."). Officer Hambrock testified, and the dash cam footage corroborated, that he noticed Eggleston's license plate was distorted and

appeared to be in a plastic bag such that it was unreadable "while driving at very close proximity." Simpson, 520 F.3d at 542. This is sufficient to establish reasonable suspicion that Eggleston was driving with an obstructed license plate in violation of Tenn. Code Ann. § 55-4-110(b), which authorized Officer Hambrock to pull over Eggleston's vehicle. See id.

**B.   Officer Hambrock Did Not Exceed the Scope of the Stop**

Even if an initial stop is valid, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." Rodriguez v. United States, 575 U.S. 348, 350 (2015); see also United States v. McColley, No. 3:09-00193, 2011 WL 253166, at *5 (M.D. Tenn. Jan. 25, 2011) (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005) (internal quotation marks omitted)) ("[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution."). As stated by the Sixth Circuit:

> [t]o qualify as reasonable seizures under the Fourth Amendment, Terry detentions must be limited in both scope and duration. Under Terry's duration prong, a stop must last no longer than is necessary to effectuate the purpose of the stop. Under its scope prong, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

United States v. Everett, 601 F.3d 484, 488-89 (6th Cir. 2010) (internal citations and quotation marks omitted). "To detain a

motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." United States v. Aguilera-Pena, 426 F. App'x 368, 370 (6th Cir. 2011) (quoting United States v. Townsend, 305 F.3d 537, 541 (6th Cir. 2002) (internal quotation marks omitted)); see also United States v. Winters, 782 F.3d 289, 296-97 (6th Cir. 2015). As instructed by the Sixth Circuit, the proper inquiry is not whether a defendant was detained at a traffic stop longer than an average person, "but whether he was detained longer than reasonably necessary for the Officers to complete the purpose of the stop in this case." United States v. Bell, 555 F.3d 535, 541 (6th Cir. 2009). "'[O]rdinary inquiries incident to the traffic stop,' such as 'checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance'" are incorporated in the primary purpose of the stop. United States v. Valverde, No. 1:18-10005-STA, 2018 WL 9618060, at *5 (W.D. Tenn. Sept. 10, 2018) (quoting Rodriguez, 575 U.S. at 355). Additionally, "[e]xtraneous questions" – those that do not relate to the primary purpose for the stop – can be asked during a valid traffic stop, provided they do not prolong the stop beyond what was necessary to complete the stop. Id. (citing United States v. Stepp, 680 F.3d 651, 664 (6th Cir. 2012)).

Here, both the duration and scope of the traffic stop were reasonably limited to the purpose of the stop. Roughly sixteen minutes elapsed between when Officer Hambrock first instructed Eggleston to pull his vehicle over and when Eggleston handed Officer Hambrock the bag of marijuana. See United States v. Marsh, 443 F. App'x 941, 943 (6th Cir. 2011) ("Even though fifteen minutes might have been atypically long for a traffic stop, the record does not show that it was longer than necessary to complete the tasks related to the stop."). During this time, Officer Hambrock conducted a records check on Eggleston's Tennessee identification card and the car's VIN number, which revealed that Eggleston had violated several additional Tennessee traffic laws, and he began filling out paperwork for the multiple misdemeanor traffic citations that he intended to issue. See Guajardo, 388 F. App'x at 489; see also United States v. Smith, 601 F.3d 530, 542 (6th Cir. 2010) ("Nor was it inappropriate for [the officer] to check both whether Williams and Garrett had valid identification and whether they had any outstanding warrants."); Bell, 555 F.3d at 541 ("In a traffic stop, 'an officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity would be well within the bounds of the initial stop.'") (quoting United States v. Wellman, 185 F.3d 651, 656 (6th Cir. 1999) (internal quotation marks omitted)); United States v. Lash, 665 F. App'x 428, 430-31

(6th Cir. 2016) (citing Rodriguez, 575 U.S. at 353-54) (holding that the purpose of a traffic stop was not completed where the officer "had not written a ticket, issued a verbal warning, or told Lash that he would not do any of those things" and thus the officer did not unreasonably extend the stop by asking ordinary inquiries that "serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly"). Although Officer Hambrock walked back and forth between the cruiser and Eggleston's vehicle several times, there is no evidence to suggest that Officer Hambrock prolonged the traffic stop beyond what was necessary for an ordinary traffic stop. Rather, Officer Hambrock was in the process of conducting "ordinary inquiries incident to the traffic stop" – such as verifying identification information and completing paperwork for the misdemeanor traffic violations – when he smelled the marijuana. See Valverde, 2018 WL 9618060, at *5 (quoting Rodriguez, 575 U.S. at 355). As such, the purpose of the traffic stop had not yet been completed when Officer Hambrock inquired "into matters unrelated to the justification for the traffic stop" and was told about (and handed the baggie of) the marijuana. Stepp, 680 F.3d at 662; see also United States v. Howard, 815 F. App'x 69, 75 (6th Cir. 2020) ("[A]n officer may ask unrelated questions to his heart's content, provided he does so during the supposedly dead time while he or another officer is completing a task related

to the traffic violation.") (quoting Everett, 601 F.3d at 492). Thus, the scope of the traffic stop was reasonable and did not violate Eggleston's Fourth Amendment rights.

**C. Officer Hambrock Was Justified in Searching the Vehicle**

The undersigned submits that the officers were justified in searching the car under the "automobile exception" to the Fourth Amendment. "Under the automobile exception to the warrant requirement, law enforcement officers may search a readily mobile vehicle without a warrant if they have probable cause to believe that the vehicle contains evidence of a crime." United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998) (citing United States v. Ross, 456 U.S. 798, 799 (1982)). There is probable cause triggering the automobile exception where "there is a fair probability that contraband or evidence of a crime will be found." United States v. Keeling, 783 F. App'x 517, 523 (6th Cir. 2019) (quoting United States v. Cope, 312 F.3d 757, 775 (6th Cir. 2002)). This search may include all parts of a legitimately stopped vehicle, including the trunk and all containers where evidence of the suspected crime might be found. United States v. Stubblefield, 682 F.3d 502, 507 (6th Cir. 2012); see also United States v. Bailey, 407 F. App'x 27, 29 (6th Cir. 2011) (holding that a strong smell of marijuana and marijuana found on the floorboard of the car on the driver's side provided "more than enough probable cause" to justify a search of the entire vehicle); United States v. Burns,

298 F.3d 523, 542 (6th Cir. 2002) ("Once the bag of crack cocaine was found in plain view, the officers had probable cause to believe that other contraband might be in the car."); United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986) (holding that where a small bag of marijuana was found on the floorboard of the car, the officer "had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband"). Here, not only did Officer Hambrock smell marijuana through the window, but Eggleston handed him a bag of marijuana from the car's console. Seconds later, Eggleston advised him that there was a gun in the car and that he had a prior felony conviction. This was more than sufficient to provide Officer Hambrock with probable cause to believe that "contraband or evidence of a crime" would be found in the vehicle.[4] Cope, 312 F.3d at 775.

### III. RECOMMENDATION

---

[4] Additionally, Eggleston's argument that the evidence must be suppressed because of Tennessee's cite and release statute is not persuasive. Tenn. Code Ann. §§ 40-7-118(b)(1); 55-10-207(a)(1). As the undersigned found above, Officer Hambrock had a proper basis to initiate the stop and, at all times, he acted within the permissible scope of the stop. Because it was constitutional for the officers to search the vehicle, Tennessee's cite and release statute does not apply to the situation at hand. See United States v. Chol, No. 3:18-cr-00273, 2019 WL 3531935, at *5 (M.D. Tenn. Aug. 2, 2019) (holding that Tennessee's cite and release statute did not require suppression of evidence where officers had probable cause to arrest the defendant and were permitted to search his car under the Fourth Amendment).

For the reasons above, the undersigned recommends that Eggleston's Motion to Suppress be denied.

Respectively submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 12, 2021
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**